**FLEISCHER & FLEISCHER**
**Brian M. Fleischer, Esquire**
**Ivy M. Kempf, Esquire**
**Plaza 1000 At Main Street**
**Suite 208**
**Voorhees, NJ 08043**
**(856) 489-8977**

**Attorneys for Plaintiff**

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Advanta Bank Corp., as assignee of Preferred Captial Corporation, 1020 Laurel Oak Road, Voorhees, NJ 08043 | : : : : : |
| Plaintiff, | : CIVIL ACTION NO. 02CV4054 |
| v. | : : |
| R.R. Blimline, Inc. and Raymond Blimline, 3305 Penn Avenue West Lawn, PA 19609 | : **PLAINTIFF'S BRIEF IN SUPPORT OF** : **ITS MOTION FOR SUMMARY** : **JUDGMENT AGAINST DEFENDANT** : |
| Defendants. | : : |

## **TABLE OF CONTENTS**

I.    Preliminary Statement .................................................................................................. 1

II.   Factual Background .................................................................................................... 1

III.  Legal Argument ........................................................................................................... 2

IV.   Award of Attorneys' Fees ............................................................................................ 4

V.    Conclusion .................................................................................................................... 5

**TABLE OF AUTHORITIES**

**Fed. R. Civ. Pro. 56** .................................................................................................... 2, 3

**New Jersey Court Rule 4:49-2** ................................................................................ 4

**AT&T Credit v. Transglobal Telecom Alliance**, 996 F. Supp. 299 (D.N.J. 1997) .................. 4

**Celotex Corp v. Cartrett**, 106 S. Ct. 2548 (1986) ................................................. 2, 3, 4

**First Virginia Bank v. Randolph**, 920 F. Supp. 213 (D.D.C. 1996) ........................................... 3

**Holbert v. Great Gorge Village**, 281 N.J. Super. 222 (Ch. Div. 1994) ...................................... 4

**In Re Data Corp. V. Securities Litigation**, 933 F.2d 616 (8th Cir. 1991) ................................ 3

**Liqui-Box v. Estate of Elkman**, 238 N.J. Super. 588 (App. Div.), certif. denied 122 N.J. 142 (1990) ......................................................................................................................... 4

**Ryan v. Beiderman Industries**, 223 N.J. Super. 492 (App. Div. 1988) .................................... 4

**Satellite Gateway Com. v. Musi Dining Car Co.**, 110 N.J. 280 (1988) ..................................... 4

I.     **PRELIMINARY STATEMENT**

Plaintiff, Advanta Bank Corp. ("Plaintiff"), as assignee of Preferred Capital Corporation, hereby submits this Brief in Support of its Motion for Summary Judgment.  Summary Judgment should be granted against Defendants R.R. Blimline, Inc. ("R.R.") and Raymond Blimline, ("Blimline") because there are no genuine issues of material fact with regard to the fact that:  (1) Defendant R.R. entered into an Equipment Lease Agreement (the "Lease") with Plaintiff; (2) Defendant Blimline signed a Personal Guaranty; (3) Defendant's received and accepted the equipment under the Lease; (4) Defendants failed to make payments due and owing to Plaintiff under the Lease; and (5) Defendants' payment obligations under the Lease are unconditional and non-cancelable.

II.     <u>**FACTUAL BACKGROUND**</u>

On or about April 27, 2000, Defendant R.R. entered into the Lease with Plaintiff.[1]  A true and correct copy of the Lease is attached hereto as Exhibit "A" and incorporated herein by reference.  Contemporaneous with signing the Lease, Defendant Blimline signed a Personal Guaranty.  <u>See</u> a true and correct copy of the Personal Guaranty attached hereto as Exhibit "B" and incorporated herein by reference.  Defendants also signed an Acknowledgment and Acceptance of Equipment certifying, *inter alia*, that Defendants had accepted and used the equipment.  <u>See</u> a true and correct copy os the Acknowledgment and Acceptance of Equipment attached hereto as Exhibit "C" and incorporated herein by reference.  The Lease is a "finance lease" as defined by Article 2A of the Uniform Commercial Code.  <u>See</u> paragraph 4 of Exhibit

---

[1] Preferred Capital Corp. assigned the Lease to Plaintiff and all rights with respect to the Lease at issue in this case were transferred to Plaintiff upon its assignment.

"A".  Defendant R.R. <u>admits</u> signing the Lease at issue.  <u>See</u> paragraph number 2 of Defendant's Answers to Plaintiff's Interrogatories directed to Defendant R.R. attached hereto as Exhibit "D" and incorporated herein by reference.  Defendant Blimline admits signing the Personal Guaranty.  <u>See</u> paragraph 6 of Defendant's Answers to Plaintiff's Interrogatories directed to Defendant Blimline attached hereto as Exhibit "E" and incorporated herein by reference.  Defendants admit that the individuals who signed the Lease and Personal Guaranty had the authority to do so.  <u>See</u> paragraph 3 of Exhibit "D" and paragraph 7 of Exhibit "E".  Furthermore, Defendants expected to be bound by the terms of the Lease.  <u>See</u> paragraph 4 of Exhibit "D" and paragraph 8 of Exhibit "E".  Defendants breached the Lease by failing to remit payments due and owing under the Lease.

Plaintiff was not involved in the choice of supplier for the equipment or the type of equipment purchased.  Plaintiff provided the financing for the Defendant to purchase the equipment at issue.  <u>See</u> paragraph 4 of Exhibit "A".

The Lease also contains a specific provision, whereby in the event of a default by Defendant under the terms and conditions of the Lease, Defendant shall be responsible for the payment of Lessor's attorneys' fees.  <u>See</u> paragraph 24 of the Lease.  Despite numerous demands, Defendants failed to make payment to Plaintiff of the amount due and owing under the Lease.  The aforementioned actions by Defendants constitute breach of contract and caused Plaintiff to suffer damages.

### III.    LEGAL ARGUMENT

A litigant is entitled to Summary Judgment upon a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law". Fed. R. Civ. P. 56(c). The United States Supreme Court discussed the standard for Summary Judgment at length in Celotex Corp. v. Catrett, 106 S. Ct. 2548 (1986). The court in Celotex stated:

> "the plain language of Rule 56(c) mandates the entry of Summary Judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Celotex Corp., 106 S. Ct. at 2552.

Moreover, "a party must show a factual dispute regarding a *viable* issue" in order to avoid Summary Judgment. In Re Control Data Corp. v. Securities Litigation, 933 F.2d 616 (8th Cir. 1991) (emphasis in original). "[A] adverse party may not rest upon mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); See also Celotex Corp., 106 S. Ct. at 2553.

"A motion for [S]ummary [J]udgment is particularly appropriate if the claim turns on a legal, not a factual, question." First Virginia Bank v. Randolph, 920 F. Supp. 213, 215 (D.D.C. 1996). When a party fails to establish an essential element of its case, there can be "no genuine issue as to any material fact". Celotex Corp., 106 S. Ct. at 2552.

In the case at bar, the standards for summary judgment have been met by Plaintiff. Defendant R.R. admits signing the Equipment Lease Agreement at issue. See paragraph 3 of Exhibit "D". Defendant Blimline admits signing the Personal Guaranty. See paragraph 6 of Exhibit "E". Defendants admit that the individuals who signed the Lease and Personal Guaranty had the authority to do so. See paragraph 3 of Exhibit "D" and paragraph 7 of Exhibit "E". By signing the Acknowledgment and Acceptance of Equipment, Defendants certified, *inter alia*, that they accepted and used the equipment. See Exhibit "C".

3

This lease transaction is referred to in the industry as a "finance lease" arrangement, as distinguished from an "inventory lease" arrangement. Pursuant to Article 2A of the Uniform Commercial Code, in finance lease arrangements, the leasing company, as here, is usually a financial institution that does not manufacture, distribute, or maintain an inventory of equipment but merely provides the financing with which to purchase equipment that has already been selected by the end-user/lessee from an independent vendor.[2] The equipment never passes through the hands of the lessor but instead is delivered by the vendor directly to the lessee, and the lessor then pays the vendor for the purchase and commences the lease. Typically, as here, an end-user/lessee goes to a finance lessor seeking financing when the applicant does not want to pay cash or obtain a bank loan, or when the applicant determines that there will be certain tax or accounting advantages by leasing.

---

[2] 2A:103(g) "Finance lease" means a lease with respect to which:
  (i) the lessor does not select, manufacture or supply the goods;
  (ii) the lessor acquires the goods or the right to possession and use fo the goods in connection with the lease; and
  (iii) one of the following occurs:

    (A)    The Defendant receives a copy of the contract by which the lessor acquired the goods or the right to possession and use of the goods before signing the lease contract;

    (B)    The Defendant's approval of the contract by which the lessor acquired the goods or the right to possession and use of the goods is a condition to the effectiveness of the lease contract.

    (C)    The Defendant, before signing the lease contract, receives an accurate and complete statement designating the promises and warranties, and any disclaimers of warranties, limitation or modifications of remedies, or liquidated damages, including those of a third party, such as the manufacturer of the goods, provided to the lessor by the person supplying the goods in connection with or as part of the contract by which the lessor acquired the goods or the right to possession and use of the goods; or

    (D)    If the lease is not a consumer lease, the lessor, before the Defendant signs the lease contract, informs the Defendant in writing (a) of the identity of the person supplying the goods to the lessor, unless the Defendant has selected that person and directed the lessor to acquire the goods or the right to possession and use fo the goods from that person, (b) that the Defendant is entitled under this chapter to the promises and warranties, including those of any third party, provided to the lessor by the person supplying the goods in connection with or as part of the contract by which the lessor acquired the goods or the right to possession and use of the goods, and (c) that the Defendant may communicate with the person supplying the goods to the lessor and receive an accurate and complete statement of those promises and warranties, including any disclaimers and limitation of them or of remedies.

According to the terms of the Lease, Defendants were to make monthly payments of $2,082.93 including applicable taxes for a term of sixty months. The Defendants executed the Lease, including the Acknowledgment and Acceptance of Equipment. See Exhibit "C". In the Acknowledgment and Acceptance of Equipment, the Defendant certified, *inter alia*:

> **"LESSEE ACKNOWLEDGES AND AGREES THAT LESSEE'S OBLIGATIONS TO LESSOR BECOME ABSOLUTE AND IRREVOCABLE AND LESSEE SHALL BE FOREVER ESTOPPED FROM DENYING THE TRUTHFULNESS OF THE REPRESENTATIONS MADE IN THIS DOCUMENT."** (Emphasis added).

See Exhibit "C". In addition, by signing the Acknowledgment and Acceptance of Equipment, Defendants authorized Plaintiff to pay the vendor in full. Specifically, the Acknowledgment and Acceptance of Equipment states:

> **"BY SIGNATURE BELOW, LESSEE SPECIFICALLY AUTHORIZES AND REQUESTS PREFERRED CAPITAL CORPORATION TO MAKE PAYMENT TO THE SUPPLIER OF THE EQUIPMENT."** (Emphasis added).

After receiving the executed Lease, Personal Guaranty and Acknowledgment and Acceptance of Equipment, and in reliance thereon, Plaintiff accepted and executed the Lease, paid the Vendor, and commenced the Lease. In agreeing to accept this Lease and purchase the Equipment for the Defendants, Plaintiff relied on the terms agreed to by the Defendant in the Lease, Personal Guaranty and Acknowledgment and Acceptance of Equipment, including:

> **"THIS LEASE IS NOT CANCELABLE OR TERMINABLE BY LESSEE."**

See Exhibit "A".

As set forth above, this paragraph is a what is referred to as a "hell or high water" provision whereby the Defendant must pay the lessor "come hell or high water". This provision is critical in lease financing as the lessor does not manufacture, sell or select the equipment but is merely the financing source enabling the Defendant to acquire use of the equipment.

Hell and High Water provisions are statutorily provided for in the Uniform Commercial Code. Specifically, N.J.S.A. 12A:2A-407[3] provides as follows:

(1) In the case of a finance lease … the Defendant's promises under the lease contract become irrevocable and independent upon the Defendant's acceptance of the goods.
(2) A promise that has become irrevocable and independent under subsection (1):
(a) is effective and enforceable between the parties, and by or against third parties including assignees of the parties, and
(b) is not subject to cancellation, termination, modification, repudiation, excuse, or substitution without the consent of the party to whom the promise runs.
(3) This section does not affect the validity under any other law of a covenant in any lease contract making the Defendant's promises irrevocable and independent upon the Defendant's acceptance of the goods.

The validity of Hell and High Water provisions has been repeatedly upheld by the majority of courts nationwide, including, but not limited those of New Jersey.[4]

---

[3] Although Plaintiff refers to the version of the Uniform Commercial Code adopted by New Jersey, Pennsylvania has adopted the same.

[4] See: In re First Interregional Advisers Corp., 218 B.R. 722 (Bkrtcy. N.J. 1997). See also: AT&T Credit Corp. v. Transglobal Telecom Alliance, 966 F.Supp. 299 at 302 (D.NJ 1997). See also AT&T Credit Corp. v. Zurich Data Corp., 37 F.Supp.2d 367 at 371 (D.NJ 1999). In Miller Auto Leasing Co. v. Weinstein, 189 N.J. Super. 543, 461 A.2d 174 (Law Div. 1983), aff'd per curiam, 193 N.J. Super. 328, 473 A.2d 996 (App. Div.1984), the plaintiff-lessor leased a car to the defendant-lessee after the defendant chose the car from the stock of an automobile dealer. The dealer recommended that the car be leased from the plaintiff, and the car was delivered by the dealer. The lessor made no express warranties of any kind, and had no duty to repair or maintain the vehicle. When the car failed to operate less than a year later, the court held that the Defendant could not claim that the lessor had breached any warranty because, among other things, the Defendant had not relied upon the lessor's skill and judgment in choosing the automobile. See also A-Leet Leasing Corp. v. Kingshead Corp., 150 N.J. Super. 384, 392, 375 A.2d 1216 (App. Div. 1977). The Pennsylvania Superior Court in U.S. Leasing Corporation v. Stephenson Equipment, Inc., 230 Pa. Super. 181, 326 A.2d 472 (1972) upheld "Hell-or-High-Water" lease provisions in a suit to recover payments due under a lease. The Federal Court in Pennsylvania concurred when it stated that "Hell-or-High-Water" clauses are "essential" to the equipment leasing industry, and to deny their effect would "seriously chill business in this industry..." and as such are strictly enforceable as a matter of law. Philadelphia Savings Fund Society v. Deseret Management Corp., 632 F. Supp. 129, 136 (E.D. Pa. 1985). In New York, the court likewise upheld UCC section 2A-407 and Hell and High Water clauses in the case of

Defendant's only alleged "defense", which is not a legal defense to its obligation to Plaintiff to make lease payments, is that Plaintiff has failed to mitigate damages by failing to apply the value of the collateral to the loan. See paragraph 1 of Defendants' Affirmative Defenses attached hereto as Exhibit "E" and incorporated herein by reference.  Plaintiff has not applied the value of the collateral to the loan because Plaintiff has not repossessed or sold the equipment, which is currently still in the Defendant's possession.  Furthermore, Plaintiff has made several attempts to work with Defendants in attempting to obtain a buyer for the equipment, yet Defendants have not been responsive.

Defendant's only response to Plaintiff's allegations is that Plaintiff did not mitigate damages.  This does not serve as a valid defense, but further helps to show that Defendants are liable to Plaintiff.  In light of the foregoing, Plaintiff Advanta Bank Corp. is entitled to Summary Judgment as a matter of law.

## IV.   AWARD OF ATTORNEYS' FEES

In addition, Plaintiff is entitled to an award of attorneys' fees as provided for in the Lease. Pursuant to the express provisions of the Lease, New Jersey law governs this dispute.  See Exhibit "A"; see also AT&T Credit v. Transglobal Telecom Alliance, 996 F. Supp. 299 (D.N.J. 1997).  Consequently, New Jersey law entitles Plaintiff to recover attorneys' fees pursuant to the terms of the Lease.

---

G.E.Capital Corp. v. National Tractor Trailer School, Inc., 667 NYS2d 614, 36 UCC Rep.Serv.2d 749 (1997).

Rule 4:42-9 places limitations on a prevailing party's right to recover attorneys' fees. However, attorneys' fees are recoverable if the parties to a promissory note, power of attorney or other agreement or contract agree in advance to such an award (even if the particular matter does not fall within the scope of R.4:42-9).  See generally, Satellite Gateway Com. v. Musi Dining Car Co., 110 N.J. 280 (1988); Ryan v. Beiderman Industries, 223 N.J. Super. 492 (App. Div. 1988); Liqui-Box v. Estate of Elkman, 238 N.J. Super. 588 (App. Div.), certif. denied 122 N.J. 142 (1990); Holbert v. Great Gorge Village, 281 N.J. Super. 222 (Ch. Div. 1994).

Paragraph 24 of the Lease provides for, among other remedies, the award of attorneys' fees in the event of a default by the Lessee. Paragraph 24 states that the Defendant shall pay reasonable attorneys' fees which have been held to be twenty (20%) percent of the amount demanded. Therefore, Plaintiff is entitled to $16,097.96 in reasonable attorneys' fees (20% of $80,489.82 = $16,097.96).

## V.  CONCLUSION

Defendant R.R. does not deny entering into the Lease at issue. Defendant Blimline does not deny signing the Personal Guaranty. Defendants also signed the Acknowledgement and Acceptance of Equipment certifying, *inter alia*, that Defendants received the equipment in good working order and used the equipment. However, Defendants stopped making payments required by the Lease. Defendants have not raised a valid defense as to their liability for failure to remit payment to Plaintiff. In light of the foregoing, there are no genuine issues as to any material facts in dispute. Accordingly, Plaintiff's Motion for Summary Judgment must be granted. Plaintiff, Advanta Bank Corp., hereby respectfully requests this Honorable Court to

grant judgment in its favor and against the Defendants, R.R. Blimline and Raymond Blimline, in the amount of $80,489.82 plus interest, costs and attorneys' fees in the amount of $16,097.96, for a total judgment of $96,587.78, plus costs of suit and such other and further relief as this Court deems just and proper.

                          Respectfully Submitted,

                          By: _____
                               Brian M. Fleischer, Esquire
                               Ivy M. Kempf, Esquire
                               Attorneys for Plaintiff

Dated: